UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEVEN SARGENT,
    Petitioner,


    v.                                    CIVIL ACTION NO.
                                          03-11124-RGS

LYNN BISSONNETTE,
    Respondent.

**REPORT AND RECOMMENDATION RE:
RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO
PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS
(DOCKET ENTRY # 42)**

**January 10, 2011**

**BOWLER, U.S.M.J.**

Respondent Lynn Bissonnette ("respondent"), former

Superintendent of the North Central Correctional Center ("NCCC")

in Gardner, Massachusetts,[1] opposes issuance of the above styled

petition for writ of habeas corpus filed under 28 U.S.C. § 2254

("section 2254") by petitioner Steven Sargent ("petitioner"), an

---

[1] James Saba ("Saba") is the current Superintendent of NCCC
and therefore the proper custodian and respondent. See Rule
2(a), 28 U.S.C. foll. § 2254; see also Advisory Committee Notes,
1976 Adoption, Rule 2(a), 28 U.S.C. foll. § 2254 (if habeas
applicant is presently in custody, proper respondent is "state
officer having custody of the applicant" which "in the usual case
is either the warden of the institution in which the petitioner
is incarcerated or the chief officer in charge of state penal
institutions"). As provided by Rule 25, Fed. R. Civ. P., Saba is
therefore "automatically substituted" as the proper party. See
Rule 12, Rules Governing Section 2254 Cases, 28 U.S.C. foll. §
2254.

inmate at NCCC. (Docket Entry # 42). In the memorandum in opposition to the petition, respondent asserts that three of the four grounds in the petition fail on the merits and the remaining ineffective assistance of trial counsel ground raised in a September 22, 2009 motion to reopen (Docket Entry # 38) is futile as untimely. (Docket Entry # 40).

On June 4, 2003, petitioner filed the petition raising the following three grounds: (1) the trial judge denied petitioner his Sixth and Fourteenth Amendment right to present a defense by refusing to admit into evidence a manual outlining the curriculum for teaching child abduction and abuse prevention; (2) the trial judge violated petitioner's right to an impartial jury by failing to ask a juror about something he had written on, but then crossed out, a juror questionnaire form; and (3) the trial judge denied petitioner his right to present a complete defense when he excluded lay testimony about the victim's father's arrest for domestic violence.

In the September 22, 2009 motion to reopen, petitioner moved to reopen the proceeding, which had been stayed and thereafter administratively closed, and to supplement the petition with the ineffective assistance of trial counsel claim which he had exhausted in state court proceedings during the stay. On October

8, 2009, the court entered the following order on the motion: "Electronic ORDER entered granting 37 Motion; finding as moot 38 Motion to Alter Judgment; granting 38 Motion to Reopen Case. The Petitioner shall file any supplemental brief by October 23, 2009." Petitioner filed the supplemental brief addressing the merits of the foregoing claims including the ineffective assistance of trial counsel claim on October 23, 2009.[2]

An evidentiary hearing is not required. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") bars an evidentiary hearing in federal court unless a petitioner shows that his "claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). Restated, the standard provides that "if a petitioner develops a factual basis for a claim in state court (or sufficiently attempts to do so), subpart (e)(2) does *not* bar an evidentiary hearing in district court." Guidry v. Dretke, 397 F.3d 306, 323

---

[2] The ineffective assistance of counsel claim is therefore part of the petition as supplemented. As explained below, respondent's argument that the claim is untimely is correct although the argument that this court should deny leave to amend is moot in light of the above ruling.

3

(1st Cir. 2005); see also Teti v. Bender, 507 F.3d 50, 61-62 (1st Cir. 2007) (discussing 28 U.S.C. § 2254(e)(2)). It is debatable whether petitioner satisfies this bar given the belated effort to develop facts relative to trial counsel's allegedly ineffective investigation of a defense. In any event, an evidentiary hearing would not enable petitioner to establish facts that, "if true, would entitle the applicant to federal habeas relief." Teti v. Bender, 507 F.3d at 62. Facts, even if developed, would not avoid the conclusion that the claims either fail on the merits or are untimely.


BACKGROUND[3]

In June 1998, a grand jury sitting in the Massachusetts Superior Court (Middlesex County) ("trial court") indicted petitioner on one count of rape of a child in violation of Massachusetts General laws chapter 265, section 23; one count of assault of a child with intent to rape in violation of Massachusetts General laws chapter 265, section 24B; and one count of indecent assault and battery on a child under the age of 14 in violation of Massachusetts General laws chapter 265,

---

[3] Citations to the record are provided primarily for direct quotations.

4

section 13B.

The alleged offenses took place in the spring of 1998 when the victim was in first grade in public school in Dracut, Massachusetts. Petitioner lived in an apartment in the same building as the victim and her family in Dracut. She was seven years old at the time. Before the family moved to another town in June 1998, petitioner "had frequent contact with the victim and her parents, and the victim often visited [petitioner's] apartment."[4] (Docket Entry # 44, S.A. 215). Petitioner owned a cat and the victim returned the cat to petitioner a number of times. During trial, testimony revealed that the victim used the same phrase contained in the manual, to wit, "private parts." After the family moved in June to Lowell, Massachusetts, the victim "told her mother that [petitioner] had sexually assaulted her on at least three separate occasions." (Docket Entry # 44, S.A. 215). A police investigation ensued leading to petitioner's arrest.

---

[4] The quoted facts are set forth in a memorandum and order denying a motion for a new trial. These facts are presumed correct. See 28 U.S.C. § 2254(e)(1); Teti v. Bender, 507 F.3d at 57-59; see also Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001) (AEDPA defines factual issues "as 'basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators'").

The case proceeded to trial in August 1999.  Jury selection began on August 18.  Trial counsel used three preemptories to challenge individuals who, according to the petition, should have been struck for cause.  One individual stated that her former husband had been sexually abused as a child but stated she "could be fair."  (Docket Entry # 44, S.A. 85).  Another individual informed the trial judge that her daughter had made an allegation of sexual abuse "many, many years" ago.  (Docket Entry # 44, S.A. 89).  She explained why the incident would not affect her judgment and, upon further questioning, explained that she did not "want to see anyone falsely accused."  (Docket Entry # 44, S.A. 90).  A third prospective juror, a police officer, stated that "sometimes" police officers "shade things at bit" but also make mistakes.  (Docket Entry # 44, S.A. 95).  When the trial judge asked the individual how he would make a judgment as to whether a police officer was telling the truth, the prospective juror replied, "Based on the evidence and the facts presented." (Docket Entry # 44, S.A. 95).  After further questioning during which he denied knowledge of any sexual abuse of a child by members of his family and close personal acquaintances, the trial judge refused to strike the juror for cause.  (Docket Entry # 44, S.A. 96-97).  The foregoing individuals did not sit on the jury

because trial counsel used peremptory challenges to strike them from the panel.

Trial counsel also attempted, without success, to have the trial judge ask another prospective juror questions about what he crossed out on the juror questionnaire form. In answer to previous questions posed by the trial judge, the individual indicated that he had not read or heard anything about the case. He also indicated that neither he nor any member of his family or close personal acquaintance had been a victim or been accused of sexual abuse of a child. Having answered these questions demonstrating impartiality, the trial judge denied trial counsel's request to ask additional question(s) about the form and denied a request for additional peremptory challenges that would have allowed trial counsel to strike this juror. The individual ended up serving on the jury.

During trial, the issue regarding the admission of the manual arose. Captioned "Kids and Company Together for Safety," the teaching manual set out skills and safety strategies for kindergarten through fifth grade students. With respect to first grade, the manual lists inter alia knowing how to "[d]istinguish between appropriate (O.K.) and inappropriate (NOT O.K.) touches" and how to "[r]ecognize 'private parts' of the body." (Docket

Entry # 44, S.A. 105-112).

Trial counsel defended the case on the basis that the victim fabricated the incidents with the motive being to turn the family's focus away from the turmoil of violence in the home. The ability to challenge the victim's credibility was very important given the absence of corroborating physical evidence.

During trial, trial counsel filed a motion to introduce the teaching guide into evidence. (Docket Entry # 44, S.A. 8 & 103). He argued that the manual explained the victim's use of the phrase "private parts" during her trial testimony and showed that she received instruction at school and fabricated the charges as a means to draw attention and stop the domestic violence in her family. Trial counsel also explained that the Assistant Superintendent of the Dracut school system, who did not testify, "would not say more than" the information contained in the manual's cover sheet, to wit, its dissemination at the school. (Docket Entry # 44, S.A. 104 & 118). When the trial judge pointed out that the manual was only a guide to teachers with the relevant issue being what the victim heard in the classroom and whether she heard the terms used in the manual, trial counsel expressed doubt that the victim's first grade teacher, if she testified, would remember what she taught the class more than one year after giving any such instruction. (Docket Entry # 44, S.A. 118-119).

The trial judge denied the motion without prejudice and allowed trial counsel to inquire about the subject through cross examination and then "see what develops as a result" of the testimony. (Docket Entry # 44, S.A. 8-12). At trial, the victim gave the following testimony:

> Q. Did you ever learn about any rules about no touching, no kissing, and no hugging?
> A. Yes . . .
> Q. Do you remember if that was anything the teacher taught you or was that just something that happened between you and your friends?
> A. My teacher taught me . . .
> Q. Did she tell you there was different types of touching?
> A. Yeah.
> Q. And what types of . . . I'm hoping you can tell me what types of different touchings there are.
> A. Like a hug or a kiss, or maybe touch some places you're not supposed to.
> Q. And your teacher talked to you and the other students about that?
> A. Yeah.

(Docket Entry # 44, S.A. 207-208).

The victim's mother testified that when the victim was in first grade she came home and told her about rules relating to touching, kissing and hugging. The following exchange took place during the mother's testimony:

> A. She told me that she can't kiss--that nobody in the school can kiss nobody, can hug nobody, can't touch nobody, can hit nobody.
> Q. Did she . . . tell you were those--or who told her about those rules in school?
> A. The teacher told her--all those kids in there . . .
> Q. Well, did she tell you that they had talked about different types of things at school?
> A. Yes. We talked like this, "[victim's name], nobody can kiss you, nobody can touch you, nobody can hit you. If something like this happen[s] in school, you tell your

9

teacher." All those stuffs [sic].
Q. Did she tell you that they had used the word or that she had heard the words, "private parts," in school?
A. Yes.
Q. And she heard that from the teacher, right?
A. Probably, or some of her friends. I don't know.

(Docket Entry # 44, S.A. 211-213).

Trial counsel renewed the motion after the foregoing testimony urging the trial judge to admit the manual into evidence because it explained where she heard the phrase "private parts" and that she was "taught in the school" as opposed to "the mother believing it was taught in the school." (Docket Entry # 44, S.A. 125-128). The trial judge excluded the manual reasoning that it was only a teaching guide and that there was no testimony from a witness about what actually was taught to the first grade class and likely taught to the victim. In excluding the manual, the trial judge balanced the potential for misleading and confusing the jury together with the potential for speculation and unfair prejudice in light of the alternative source for the information through the testimony by the victim and the mother.[5]

---

[5] The manual was an outline of lesson plans for each grade but there was no indication how the teachers implemented the plans and themes in the manual to the first grade class, according to the trial judge. He reasoned that:

We don't know how they implemented the lesson plan. And without some indication of that--the potential for misleading . . . the potential for speculation, the potential for confusion, and the potential for unfair prejudice substantially outweighs the materiality of the document itself, particularly in view of the admission by the complaining witness herself that she was given rules

10

The other piece of evidence that trial counsel sought to
admit consisted of testimony about the arrest of the victim's
father for assaulting the mother six weeks before the charges
were brought against petitioner.  Police records accompanying
trial counsel's motion to introduce the domestic violence
evidence showed the father's arrest on May 2, 1998, at the
family's apartment for assault and battery of the mother by means
of a dangerous weapon, a hairbrush.  The motion sought to
introduce the evidence by eliciting testimony about the incident

---

about hugging, and touching, and kissing at school, and the
testimony of the complaining witness's mother that she was
given teaching about those same rules, and that she knew
about, quote, "private parts," closed quote, having obtained
the information either from classmates or from teachers at
school . . .

So that, there is no doubt that the complaining witness, by
the time these incidents are alleged to have occurred, knew,
and it's uncontested that she knew, about good and bad
touching, about rules, and about private parts, and that she
had been exposed to at least some commentary about all of
those subjects either from formal classroom instruction or
from conversations with classmates.  The ultimate objective
here and the ultimate point of relevance, of course, is how
she would come to--how a child of such tender years would
come to know of such things if it weren't for the
defendant's conduct--alleged conduct.  Here is another
source for that information out of the mouth of the mother
and the complaining witness herself.

So, particularly in view of the fact that it's the
incremental materiality of further testimony about what
actually went on in school that's at issue here, my ruling
is that all of this is inadmissible unless we get somebody
in here who is competent to testify what likely was, in
fact, taught to the children in [this victim's] class.

(Docket Entry # 44, S.A. 129-132).

11

from the mother and the father.  (Docket Entry # 44, S.A. 134-135).  Trial counsel maintained that the evidence of the domestic violence incident caused or contributed to the victim fabricating the charges.  The trial judge rejected as speculative the argument that the profound impact of a domestic violence incident would lead to false accusations of sexual abuse against an individual who was not a member of the family.  Undeterred, trial counsel asked the judge to reconsider the ruling after the testimony from the mother and the victim "which projected a very happy family relationship."  (Docket Entry # 44, S.A. 123).  The trial judge denied the request which at that time sought to call the father to the stand.

On August 24, 1999, the jury rendered guilty verdicts on all three offenses.  Previously convicted of both rape and indecent assault and battery on a child, petitioner pled guilty to the second offense portions of these charges subsequent to the jury's verdict.  The trial judge sentenced petitioner to three concurrent life terms of imprisonment to run from and after a sentence petitioner was then serving.

Represented by a different attorney, petitioner filed a timely appeal objecting to the exclusion of the manual and the domestic violence evidence as well as the denial of an impartial jury.  The Massachusetts Appeals Court ("appeals court") affirmed

the convictions on June 14, 2002.  Petitioner filed an

application for further appellate review ("ALOFAR") with the

Massachusetts Supreme Judicial Court ("SJC") which the SJC denied

on September 6, 2002.

As previously noted, petitioner filed this petition in June

2003 raising the foregoing three grounds but not the ineffective

assistance of trial counsel ground.[6]  Respondent filed a motion

to dismiss the petition as not exhausted on all three grounds

because petitioner presented them solely as state law claims.  In

response, petitioner sought a stay to return to state court and

present the grounds as federal constitutional violations.  On May

6, 2004, the court determined that ground two was exhausted but

that grounds one and three were not exhausted thereby presenting

a mixed petition.  The court allowed the stay and petitioner

returned to state court where he proceeded to exhaust his state

court remedies for the next five years.

In a motion for a new trial filed on September 12, 2007, in

the trial court, petitioner raised the exclusion of the manual

and the domestic violence evidence as a violation of his federal

_____

[6]  Petitioner signed the pro se petition on May 30, 2003,
and the court received and docketed the petition on June 4, 2003.
Petitioner is no longer proceeding pro se.

constitutional right to present a complete defense.  He also
raised the denial of an impartial jury as a violation of his
rights under the federal and state constitutions.  The motion for
a new trial additionally included a new claim that trial counsel
rendered ineffective assistance because:  (1) trial counsel did
not obtain a witness, such as the teacher who taught the victim's
first grade class, to lay the proper foundation to admit the
manual into evidence; and (2) failed to investigate the theory
that the victim's father attempted to extort $10,000 from
petitioner shortly before the filing of criminal charges.

     To bolster the latter ground, petitioner provided an
affidavit averring that he informed trial counsel before trial
that the victim's father had demanded money on a number of
occasions shortly before the charges were filed.  Another affiant
and longtime friend of petitioner submitted an affidavit that
petitioner told him that a week or a week and half before
petitioner "was arrested" that the victim's father, who he
understood was from Brazil, had requested a job and approximately
$10,000 apparently to get a green card.  (Docket Entry # 44, S.A.
36).  The affiant also stated that "[a]t some point prior to
trial" he discussed the matter with trial counsel.  (Docket Entry
# 44, S.A. 36).  Petitioner's cousin filed an affidavit averring

that two weeks before petitioner "was arrested," petitioner told

him "that a guy that was working for him from Brazil had demanded

a large sum of money in the area of $10,000." (Docket Entry #

44, S.A. 37).

Petitioner additionally filed an affidavit from trial

counsel. Trial counsel attested that:

> 5. During preparation for trial my memory is that
> [petitioner] mentioned to me something about work he had
> done with, by or for the father of the complaining witness.
> I believe he told [me] it may have involved a total sum of
> $10,000 for the effort for or by the father over some period
> of time.
>
> 6. I had some subsequent conversation with [petitioner]
> about this matter and then made a tactical decision not to
> use it as my memory is that it would have been more harmful
> than helpful.

(Docket Entry # 44, S.A. 39). Thus, there were indications prior

to trial that the victim's father had demanded the sum of $10,000

from petitioner. Trial counsel spoke with petitioner about the

issue more than once and decided not to pursue the matter because

he considered it more harmful than helpful.

A justice of the trial court who was not the trial judge

denied the motion in an eight page memorandum and order. As to

the ineffective assistance of trial counsel claim regarding the

failure to investigate, she reasoned that, "the alleged

extortion, if credited, is as consistent with the child having

15

told the truth as it is with fabrication." (Docket Entry # 44, S.A. 221). Petitioner filed a timely appeal. On appeal, he raised the same grounds and added a third basis for the ineffective assistance of trial counsel claim. The additional ground pointed to trial counsel's failure to obtain an expert to testify about "the connection between a child's exposure to domestic violence and the child's projections of fabricated allegations onto innocent people." (Docket Entry # 44, S.A. 254).

The appeals court addressed the merits and rejected all of the federal constitutional claims. Because the SJC summarily denied the ALOFAR (Docket Entry # 44, S.A. 540), the rationale of the appeals court provides the relevant framework from which to determine whether the adjudications by the appeals court are contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. See Foxworth v. St. Amand, 570 F.3d 414, 425-426 (1st Cir. 2009) (examining "the rationale of the intermediate appellate court where, as here, the state's highest court has summarily denied further appellate review"). The decision therefore warrants close examination.

Rejecting the argument that exclusion of the manual denied petitioner a complete defense under the federal constitution

(Docket Entry # 44, S.A. 237-246), the appeals court affirmed the

trial court's ruling that the manual provided cumulative evidence

in light of the testimony of the mother and the victim.  The

court also upheld the trial court's decision given the absence of

evidence that the victim received instruction from the manual in

her first grade class.  The opinion reads as follows:

> The defendant argues that he was denied his rights under the
> Federal and State constitutions to present a defense . . .
> Given the absence of any evidence that anyone ever taught
> the victim anything from the formal teaching manual, we find
> no constitutional violation.  Furthermore, the victim and
> her mother both testified that the victim learned about
> private parts and inappropriate touching in school, and the
> introduction of the manual would have been cumulative of
> this effort.

(Docket Entry # 44, S.A. 496).

With respect to the trial judge's refusal to allow testimony

by the father or the mother regarding the domestic violence

incident in early May 1998, the appeals court affirmed the trial

court and rejected the argument (Docket Entry # 44, S.A. 237-246)

that the exclusion of the testimony violated petitioner's federal

constitutional right to present a defense.

> The defendant argues that he was denied his rights under the
> Federal and State constitutions to present a defense.
>
> . . . As we noted in our decision on direct appeal, "the
> defendant did not establish any logical, experiential or
> scientific basis for finding such evidence to be relevant to
> his theory that the incident (in which he was not involved)

> created a motive for the victim (who was not shown to have
> witnessed the incident) to fabricate her allegations against
> him."
>
> . . . Even if it could be shown that children who witness
> domestic violence, as opposed to children who have been
> sexually abused, see ibid., sometimes project allegations of
> sexual abuse onto innocent third parties, the defendant did
> not seek to admit evidence that the victim here ever
> witnessed the alleged domestic violence against her mother.

(Docket Entry # 44, S.A. 496-497).

The appeals court also addressed and rejected on the merits

the federal constitutional claim of a denial of petitioner's

right to an impartial jury.

> The defendant next argues that his rights under the Federal
> and State constitutions to a trial before an impartial jury
> were violated. The defendant argues that the trial judge
> erred in refusing to strike certain jurors for cause. As we
> noted in our decision on direct appeal, "the judge's finding
> that the prospective jurors were disinterested was correct
> in light of his careful examination of them, his probing
> exploration of their possible bias, his reasoned acceptance
> of their explanations and declarations of impartiality, and
> the defendant's failure to demonstrate any resultant
> manifest prejudice." These same reasons suffice to dispose
> of the defendant's argument that his constitutional rights
> to a trial before an impartial jury were violated.

(Docket Entry # 44, S.A. 497).

Finally and again on the merits, the appeals court rejected

the three ineffective assistance of trial counsel claims

petitioner presently raises in this petition. Petitioner

presently argues in the supplemental brief that trial counsel was

ineffective because:  (1) he did not summons a witness to testify

that the manual was used in the victim's first grade class to

teach the victim about sexual touching; (2) trial counsel failed

to call an expert witness to testify about the causal link

between the father's domestic violence and/or arrest and the

victim's fabrication of the sexual abuse; and (3) trial counsel

failed to investigate the theory that the victim's father

attempted to extort $10,000 from petitioner as providing a motive

to fabricate the charges.[7]  The appeals court rejected these

three bases of ineffective assistance of counsel claims as a

violation of the federal and the state constitutions.[8]

As to the first ineffective assistance of counsel claim, the

appeals court decided that trial counsel was not constitutionally

ineffective.  The relevant portion of the opinion reads as

follows:

---

[7] Petitioner's affidavit shows that he knew about the claim
inasmuch as he provided the information about the monetary demand
to trial counsel and spoke with him about it a number of times.
(Docket Entry # 44, S.A. 34 & 39).  Appellate counsel could have
raised the claim in a timely manner on direct appeal.

[8] The court's citation to the state law standard under
Commonwealth v. Saferian, 315 N.E.2d 878 (Mass. 1974), provides a
functional equivalent to the Sixth Amendment Strickland v.
Washington, 466 U.S. 668 (1984), standard.  See Phoenix v.
Matesanz, 189 F.3d 20, 26 n. 4 (1st Cir. 1999) (recognizing
functional equivalence between Strickland standard and standard
under Massachusetts law).

19

> Second, the defendant argues that defense counsel was ineffective for failing to summons into court the teacher who taught the victim about private parts and inappropriate touching or offer the testimony of any witness who could have provided a foundation for the formal teaching manual. This argument fails. In light of our conclusion that the formal teaching manual would have been cumulative, we cannot say that defense counsel was constitutionally ineffective for these alleged failures.

(Docket Entry # 44, S.A. 497).

The decision on the merits on the second ineffective assistance of counsel claim similarly decided that counsel was not constitutionally ineffective. The court explained that, "In the absence of any showing by the defendant now that such a link may be drawn, we cannot conclude that defense counsel's actions fell below what would have been expected of an ordinary fallible attorney." (Docket Entry # 44, S.A. 497). As to the final basis for ineffective assistance of trial counsel, the appeals court decided it amounted to a tactical decision that was not manifestly unreasonable. (Docket Entry # 44, S.A. 497-498).


## DISCUSSION

Section 2254(d)(1) sets out "two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 404 (2000). Under the first

category, "a state court determination is 'contrary to' clearly established law if the court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009); accord Ramdass v. Angelone, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of Supreme Court or "reaches a different result from" Supreme Court case "despite confronting indistinguishable facts"); Williams v. Taylor, 529 U.S. at 405-406 (same). "'[C]learly established Federal law'" refers to "'the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision.'" Yeboah-Sefah v. Ficco, 556 F.3d 53, 65 (1st Cir.) (brackets omitted), cert. denied,__U.S.__, 130 S.Ct. 639 (2009).

Under the second category, the federal court may grant the writ if the relevant state court decision "'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. at 404-405 (quoting statute with ellipses omitted). An unreasonable application of clearly established federal law occurs if the state court "'correctly identifies the

21

governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.'" <u>Gomes v. Brady</u>, 564 F.3d at 537; <u>see</u> <u>Foxworth v. St. Amand</u>, 570 F.3d at 425 (same and quoting <u>Sleeper v. Spencer</u>, 510 F.3d 32, 38 (1st Cir. 2007)).  The inquiry is an objective one, <u>see</u> <u>McCambridge v. Hall</u>, 303 F.3d  24, 36 (1st Cir. 2002), insofar as the decision "must have been 'objectively unreasonable.'" <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003).

An objectively unreasonable application of the relevant jurisprudence differs from an incorrect or erroneous application of such jurisprudence.  <u>Williams v. Taylor</u>, 529 U.S. at 365; <u>accord</u> <u>Wiggins v. Smith</u>, 539 U.S. at 520-521 ("state court's decision must have been more than incorrect or erroneous").  Under the unreasonable application prong, the "habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Williams v. Taylor</u>, 529 U.S. at 365; <u>accord</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007) ("question under AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable--a substantially higher threshold"). When "it is the state court's application of governing federal law that is challenged, the decision 'must be shown to be not only erroneous, but objectively unreasonable.'" <u>Waddington v. Sarausad</u>, __U.S.__, 129 S.Ct. 823, 831 (2009); <u>accord</u> <u>Foxworth v. St. Amand</u>, 570 F.3d at 425 ("state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error"). With these principles in mind, this court turns to the grounds for habeas relief.

I.  <u>Grounds One and Three</u>

Both grounds one and three articulate an alleged constitutional violation because the trial judge's exclusion of evidence denied petitioner a complete defense. Ground one challenges the decision to exclude the manual and ground three challenges the decision to exclude the testimony of the father and mother to show domestic abuse.

The right of a criminal defendant to due process is "the right to a fair opportunity to defend against the State's accusations." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973). "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, the Constitution guarantees criminal

defendants 'a meaningful opportunity to present a complete
defense.'" <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986)
(citations omitted).

The right to present a defense, however, is not unfettered.
Rather, it is subject to "reasonable restrictions." <u>United
States v. Scheffer</u>, 523 U.S. 303, 308 (1998). Reasonable
restrictions include "the state's 'legitimate interest in
ensuring that reliable evidence is presented,' and evidentiary
exclusions will not violate the constitution 'so long as they are
not "arbitrary" or "disproportionate to the purposes they are
designed to serve."'" <u>DiBenedetto v. Hall</u>, 272 F.3d 1, 8 (1st
Cir. 2001) (quoting <u>United States v. Scheffer</u>, 523 U.S. at 308,
quoting <u>Rock v. Arkansas</u>, 483 U.S. 44, 56 (1987)). In other
words, a state law evidentiary reason "for exclusion will prevail
unless it is 'arbitrary or disproportionate' and 'infringe[s]
upon a weighty interest of the accused.'" <u>Fortini v. Murphy</u>, 257
F.3d 39, 46 (1st Cir. 2001) (quoting <u>United States v. Scheffer</u>,
523 U.S. at 308); <u>see also</u> <u>Montana v. Egelhoff</u>, 518 U.S. 37, 42
(1996) (right to present evidence protected by Due Process Clause
is not unfettered); <u>Chambers v. Mississippi</u>, 410 U.S. at 295
(right to cross examine "may, in appropriate cases, bow to
accommodate other legitimate interests in the criminal trial

process").

State court trial judges therefore have a "'wide latitude'
to exclude evidence that is 'repetitive . . . , only marginally
relevant' or poses an undue risk of 'harassment, prejudice, [or]
confusion of the issues.'" Crane v. Kentucky, 476 U.S. at 690.
Even if the defendant would prefer to have the evidence admitted,
trial judges may exclude evidence by applying state "evidentiary
rules that themselves serve the interests of fairness and
reliability." Crane v. Kentucky, 476 U.S. at 690. As summarized
by the Supreme Court in Scheffer:

> A defendant's right to present relevant evidence is not
> unlimited, but rather is subject to reasonable restrictions.
> A defendant's interest in presenting such evidence may thus
> "'bow to accommodate other legitimate interests in the
> criminal trial process.'" As a result, state and federal
> rulemakers have broad latitude under the Constitution to
> establish rules excluding evidence from criminal trials.
> Such rules do not abridge an accused's right to present a
> defense so long as they are not "arbitrary" or
> "disproportionate to the purposes they are designed to
> serve." Moreover, we have found the exclusion of evidence
> to be unconstitutionally arbitrary or disproportionate only
> where it has infringed upon a weighty interest of the
> accused.

United States v. Scheffer, 523 U.S. at 308 (citations omitted).
As recognized by the First Circuit in DiBenedetto, Supreme Court
cases undoing state court convictions as contravening the
defendant's right to present reliable, exculpatory evidence

25

"involve egregious situations 'and the more recent decisions of the Court . . . create serious doubts that the Court is interested in carrying the doctrine beyond egregious cases.'" DiBenedetto v. Hall, 272 F.3d at 8.

In refusing to admit the manual, the trial judge recognized the speculative nature of the evidence because it was not apparent whether the terms in the manual or what other portions of the manual, if any, were taught to the victim in her first grade class. He excluded the manual on the basis that the potential for speculation, confusion and unfair prejudice substantially outweighed the manual's material relevance. Correctly perceiving the federal constitutional right "to present a defense," the appeals court reasonably applied the rule in affirming the decision to exclude the evidence due to its "cumulative effect" as well as its marginal relevance given the absence of evidence anyone "taught the victim anything from the formal teaching manual." (Docket Entry # 44, S.A. 496). The decision was reasonable because the evidence was cumulative to a certain degree of testimony by the mother and the victim and the real issue was not what the manual contained but what was taught to the victim in the classroom. Hence, the appeals court decision finding no violation of the federal constitutional right

to present a defense falls significantly short of an unreasonable application of such law.  See generally Holmes v. South Carolina, 547 U.S. 319, 326 (2006) (well established evidence rules "permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury").

With respect to the excluded evidence of the domestic violence incident, the trial judge accurately noted the tenuous nature of the connection between evidence of domestic violence between the mother and the father as having a tendency to produce evidence of false sexual abuse allegations by the child against a stranger.  In upholding the trial judge's decision, the appeals court recognized the governing federal constitutional right to present a defense and then correctly applied those principles by upholding the trial court's decision.  The tenuous nature of the causal connection coupled with the lack of evidence that the victim witnessed the domestic abuse incident or that domestic violence was otherwise frequent in the home provides a fair and constitutionally compliant basis to exclude the requested testimony.  See Holmes v. South Carolina, 547 U.S. at 327 (appropriate to exclude evidence that another individual committed crime when the offered evidence is remote or lacks

connection with the crime).  The decision to exclude the

testimony was neither arbitrary nor capricious and the weak

causal connection lessened any effect upon any "weighty

interest," United States v. Scheffer, 523 U.S. at 308, of

petitioner.

II.  Ground Two

Ground two in the pro se petition challenged the trial

judge's refusal to strike several prospective jurors for cause as

well as the denial of additional peremptory challenges.  (Docket

Entry # 1, ¶ 12B).  The supplemental memorandum filed by

petitioner's attorney challenges the impartiality of the

individual who sat on the jury.  Citing Ross v. Oklahoma, 487

U.S. 81, 88 (1988), petitioner acknowledges that, "Any claim that

a jury was not impartial must focus on the jurors that actually

sat."  (Docket Entry # 40, ¶ 17).

Petitioner is correct to limit the challenge to the

impartiality of the jurors who sat on the panel.  The Supreme

Court in Ross unambiguously rejected:

> the notion that the loss of a peremptory challenge
> constitutes a violation of the constitutional right to an
> impartial jury.  We have long recognized that peremptory
> challenges are not of constitutional dimension.  Gray,
> supra, at 663, 107 S.Ct., at 2054; Swain v. Alabama, 380
> U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965);
> Stilson v. United States, 250 U.S. 583, 586, 40 S.Ct. 28,

29, 63 L.Ed. 1154 (1919).  They are a means to achieve the
end of an impartial jury.  So long as the jury that sits is
impartial, the fact that the defendant had to use a
peremptory challenge to achieve that result does not mean
the Sixth Amendment was violated . . . Because peremptory
challenges are a creature of statute and are not required by
the Constitution, Gray, supra, 481 U.S., at 663, 107 S.Ct.,
at 2054; Swain, supra, 380 U.S., at 219, 85 S.Ct., at 835,
it is for the State to determine the number of peremptory
challenges allowed and to define their purpose and the
manner of their exercise.

Ross v. Oklahoma, 487 U.S. at 88-89.

Petitioner objects to the trial judge's failure to question

the juror about the crossed out markings on the juror

questionnaire form.  He contends that the appeals court's

conclusion that the trial judge conducted a probing exploration

of the juror's possible bias "was an unreasonable application of

federal jury law."  (Docket Entry # 40, ¶ 17).

Clearly established federal law as determined by the Supreme

Court does not favor petitioner's position.  The First Circuit in

Kater cogently explains the parameters of federal authority over

voir dire questioning in state court.

The Supreme Court has explained that federal authority over
voir dire in cases tried in state courts is "limited to
enforcing the commands of the United States Constitution."
Mu'Min v. Virginia, 500 U.S. 415, 422, 111 S.Ct. 1899, 114
L.Ed.2d 493 (1991).  So far, the Supreme Court has
recognized a defendant's constitutional right to voir dire
questioning only about whether jurors might be prejudiced
against defendant because of his race.  See Ham v. South
Carolina, 409 U.S. 524, 526-27, 93 S.Ct. 848, 35 L.Ed.2d 46

(1973); <u>Aldridge v. United States</u>, 283 U.S. 308, 314-15, 51
S.Ct. 470, 75 L.Ed. 1054 (1931). Even then, the inquiry in
non-death-penalty cases need not be made in every state
court case in which the races of the victim and the
defendant are different. <u>Ristaino v. Ross</u>, 424 U.S. 589,
597-98, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976); . . . <u>see</u>
<u>generally</u> 5 LaFave, et al., <u>Criminal Procedure</u> § 22.3(a), at
293 (2nd ed. 1999) ("[T]he Court has as yet declined to
extend the [<u>Ham</u>] doctrine to matters other than racial
prejudice.").

Death penalty cases present special concerns about what voir
dire may be constitutionally required, and there are special
voir dire rules in such cases. <u>See</u> <u>Turner v. Murray</u>, 476
U.S. 28, 36-37, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986)
(holding that Due Process Clause entitled death penalty
eligible defendant to voir dire questioning on racial bias
where defendant was accused of interracial crime); <u>see</u> <u>also</u>
<u>Morgan v. Illinois</u>, 504 U.S. 719, 738-39, 112 S.Ct. 2222,
119 L.Ed.2d 492 (1992) (state trial court, under Due Process
Clause, may not refuse to inquire into whether a potential
juror, regardless of facts in the case, would automatically
impose the death sentence); 5 LaFave, et al., supra, §
22.3(a), at 295.

<u>Kater v. Maloney</u>, 459 F.3d 56, 65-66 (1st Cir. 2006).

The voir dire conducted by the trial judge involved neither

a question regarding the race of the seated juror or the death

penalty. The challenge to the voir dire and the failure to ask

the juror about the crossed out markings on the form therefore do

not rise to a federal constitutional claim. It is well settled

that errors based on state law "are not within the reach of

federal habeas petitions." <u>Id.</u> at 61; <u>see</u> <u>Gilmore v. Taylor</u>, 508

U.S. 333, 348-349 (1993) (errors of state law that do not rise to

the level of a constitutional error "may not be corrected on federal habeas") (O'Connor, J. concurring); <u>Sawyer v. Smith</u>, 497 U.S. 227, 239 (1990) ("availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution").

Turning to the assertion that the juror was not impartial, it does not entitle petitioner to habeas relief under the AEDPA's unreasonable application prong. Clearly established federal law as determined by the Supreme Court "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961). The appeals court identified the correct federal constitutional right as the right to an impartial jury. (Docket Entry # 44, S.A. 497). The court then rejected the claim of a violation of petitioner's federal constitutional right to an impartial jury while noting that the trial judge's finding that the jurors were disinterested was correct due to his careful and probing examination of their potential bias. (Docket Entry # 44, S.A. 497).

The record fully supports that the appeals court decision was not an unreasonable application of clearly established

federal law as determined by the Supreme Court. There is no evidence that the juror who crossed out part of the juror questionnaire form was not impartial. The trial judge posed a number of questions to the juror designed to elicit his impartiality and the juror's answers uniformly pointed to a finding that he was impartial.

The trial judge seated the juror thereby making an implicit factual finding that the juror was able to put aside any opinion he may have and render a fair verdict based on the facts. See Patton v. Yount, 467 U.S. 1025, 1037 n.12 (1984) (noting distinction between the "factual and legal questions to be considered in deciding whether a juror is qualified"). Whether a particular juror can in fact put aside his opinion and render a verdict based on the evidence "is a determination to which habeas courts owe special deference." Id. To the extent petitioner challengers the trial judge's factual finding, he fails to overcome the presumption of correctness which the finding receives. See 28 U,.S.C. § 2254(e); Coombs v. State of Maine, 202 F.3d 14, 18 (1st Cir. 2000); accord Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007).

III. Ineffective Assistance of Counsel Claim

Respondent maintains that the ineffective assistance of

counsel claim[9] is time barred.  The relation back doctrine also fails to salvage the claim because it does not arise from the same conduct, transaction or occurrence, Rule 15(c)(2), Fed. R. Civ. P. ("Rule 15(c)"), according to respondent.

The AEDPA's one year limitations period, 28 U.S.C. § 2244(d)(1), applies to section 2254 petitions filed prior the statute's April 1996 effective date.  See Cordle v. Guarino, 428 F.3d 46, 48 (1st Cir. 2005).  The period runs from the date the conviction becomes final by the conclusion of direct review. Id.; 28 U.S.C. § 2244(d)(1)(A).  Petitioner's conviction became final 90 days after the SJC denied the first ALOFAR on September 6, 2002.  See Cordle v. Guarino, 428 F.3d at 48 ("SJC affirmed Cordle's convictions on March 11, 1992; her convictions became final ninety days thereafter").  The one year grace period therefore began to run on December 5, 2002, and ran uninterrupted until it expired on December 5, 2003.

Unfortunately for petitioner, the tolling provision set forth in 28 U.S.C. § 2254(d) provides no relief.  The AEDPA's tolling provision "is designed to protect the principles of 'comity, finality, and federalism,' by promoting 'the exhaustion of state remedies while respecting the interest in the finality of state court judgments.'"  Carey v. Saffold, 536 U.S. 214, 222

---

[9]  As previously noted, petitioner raises three distinct ways in which trial counsel was ineffective.  Whether considered a single claim or three separate claims, all are untimely.

(2002). Although applicable to the judicially engrafted grace period, see Gaskins v. Duval, 183 F.3d 8, 10 (1st Cir. 1999), the provision cannot and does not revive an expired limitations period. See Delaney v. Matesanz, 264 F.3d 7, 11 (1st Cir. 2001). Consequently, the motion for a new trial filed on September 12, 2007, does not resurrect or restart the expired one year limitations period.

Although the one year period forecloses relief for petitioners who choose to ignore it, the statute serves the "strong public interest" of encouraging "the prompt assertion of habeas claims." David v. Hall, 318 F.3d 343, 347 (1st Cir. 2003); see also Delaney v. Matesanz, 264 F.3d at 10 (Congress enacted AEDPA "in part to combat increasingly pervasive abuses of the federal court's habeas jurisdiction"). The one year time limit promotes judicial efficiency, conserves judicial resources, "safeguards the accuracy of state court judgments by requiring resolution of constitutional issues while the record is fresh, and lends finality to state court judgments within a reasonable time." Acosta v. Artuz, 221 F.3d 117, 123 (2nd Cir. 2000).

Rule 15(c)(2) therefore provides the only means to salvage the untimely ineffective assistance of counsel claim(s) filed nearly six years after the one year period expired.[10] The

---

[10] Petitioner, who bears the applicable burden, see Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005), does not argue that equitable tolling should apply. Notwithstanding the opportunity,

Supreme Court addressed the applicability of Rule 15(c)(2)'s

relation back "provision in the context of the AEDPA's one-year

statute of limitations" in <u>Mayle v. Felix</u>, 545 U.S. 644, 656

(2005). Rule 15(c)(1)(B), which applies to section 2254

petitions, <u>see</u> 28 U.S.C. § 2242 ("section 2242"); <u>Mayle v. Felix</u>,

545 U.S. at 655 (citing section 2242 and Rule 11, presently Rule

12, of Rules Governing Section 2254 Cases in the United States

District Courts), allows relation back when the claim asserted in

the amended petition "'arose out of the conduct, transaction, or

occurrence set forth or attempted to be set forth in the original

pleading.'" <u>Mayle v. Felix</u>, 545 U.S. at 656 (quoting Rule

15(c)). Because the one year limitations period in section

2244(d) evinces Congress' decision to expedite habeas attacks

"'by placing stringent time restrictions on the them,'" <u>Id.</u>

(internal brackets omitted), the provision is "strictly

construed." <u>United States v. Ciampi</u>, 419 F3d 20, 23 (1st Cir.

2005).[11]

---

petitioner did not seek leave to file an opposition to the
limitations argument raised by respondent in the memorandum in
opposition to the petition. That said, in light of the almost
six year time frame and the ability to challenge the
effectiveness of trial counsel on direct appeal by his new
attorney, any such argument is decidedly weak. <u>See</u> <u>Neves v.
Holder</u>, 613 F.3d 30, 36 n. 4 (1st Cir. 2010); <u>Trapp v. Spencer</u>,
479 F.3d 53, 61 (1st Cir. 2007) (noting relevant factor as "[t]he
petitioner's own diligence in pursuing habeas relief").

[11] Although the First Circuit in <u>Ciampi</u> considered relation
back in the context of a section 2255 petition, the court relied
extensively on the <u>Mayle</u> decision. The language of the

Rule 15(c) therefore "relaxes, but does not obliterate," the AEDPA statute of limitations. <u>Mayle v. Felix</u>, 545 U.S. at 659. In the habeas context, the rule requires and "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." <u>Id.</u> In other words, the claim in the amended petition "must arise from the 'same core facts,' and not depend upon events which are separate both in time and type from the events upon which the original claims depended." <u>U.S. v. Ciampi</u>, 419 F.3d at 24.

The claim in the original pro se petition in <u>Mayle</u> was that "the admission into evidence of videotaped testimony of a witness for the prosecution violated his rights under the Sixth Amendment's Confrontation Clause." <u>Mayle v. Felix</u>, 545 U.S. at 648. The new and untimely claim Mayle filed once represented by counsel was that "the police used coercive tactics to obtain damaging statements from him, and that admission of those statements at trial violated his Fifth Amendment right against self-incrimination." <u>Id.</u> at 649. Although both claims "involve[d] the admission of out-court-statements during the prosecutor's case in chief," they were not related because one arose from Mayle's own statements to the police in violation of the Fifth Amendment and the other arose from a witness'

---

limitations provision, 28 U.S.C. § 2244(d), and Rule 15(c) is also the same regardless of whether such language applies to a section 2254 or 2255 petition.

videotaped testimony in violation of the Confrontation Clause. Id. at 650 & 657; see U.S. v. Ciampi, 419 F.3d at 24 (parenthetical describing Mayle as "holding that claimed violations in admission of out-of-court statements were distinct under Rule 15, inasmuch as one involved a Fifth Amendment challenge to the defendant's own pretrial statements, and the other involved a Confrontation Clause challenge to videotaped witness testimony").

The examples provided by the Court in Mayle of claims that arise from "a common 'core of operative facts'" do not bode well for the timeliness of petitioner's ineffective assistance of counsel claim. The examples, set out below, evidence that the time and the type of claim matters.

> For example, in Mandacina v. United States, 328 F.3d 995, 1000-1001 (8th Cir. 2003), the original petition alleged violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), while the amended petition alleged the Government's failure to disclose a particular report. Both pleadings related to evidence obtained at the same time by the same police department. The Court of Appeals approved relation back. And in Woodward v. Williams, 263 F.3d 1135, 1142 (10th Cir. 2001), the appeals court upheld relation back where the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted.

Mayle v. Felix, 545 U.S. at 648.

The First Circuit's disallowance of the relation between the original and amended claims at issue in Ciampi eliminates any doubt of the relation back of the ineffective assistance of

counsel claim in the case at bar. Ciampi considered and rejected the attempt to relate back an ineffective assistance of counsel claim(s) to an original claim even though both claims involved Ciampi's understanding of his rights to appeal and to file collateral habeas petitions. See U.S. v. Ciampi, 419 F.3d at 22-25. The relevant pro se claim in the original petition in Ciampi was "that the district court had failed to inform him during the November 1999 plea colloquy that he was waiving his right to appeal, as well as any right to assert a collateral challenge." Id. at 22. The relevant claim in the amended petition filed by counsel was "that [trial] counsel rendered ineffective assistance *during the plea process* by failing to discuss with him (i) that acceptance of the plea agreement would constitute a waiver of his appeal and habeas corpus rights, and (ii) whether or not he had a viable appeal from his gambling conviction." Id. at 23 (emphasis in original). The Ciampi court distinguished the claims on the basis that the timely claim involved the district court's failure during the plea colloquy to make an adequate inquiry and the untimely claim involved counsel's failure to discuss the ramifications of accepting the plea during the plea process. Id. at 23-24. Indeed, under the abuse of discretion standard that applies, the Ciampi court posited that "the district court did not *remotely* abuse its discretion in determining that the amended Ciampi claims did not relate back to the pro se petition." Id.

at 24 (emphasis added).

Here too, the ineffective assistance of counsel claims do not relate back to the underlying timely claims in the original petition.  Ground one in the original petition faults the trial judge for refusing to admit the manual into evidence in violation of petitioner's right to present a complete defense.  The ineffective assistance of counsel claim attacks counsel's failure to lay a proper foundation for admission of the manual by summoning a witness to testify to its use in the victim's first grade classroom.  Like the timely claim in <u>Ciampi</u>, ground one attacks the decision by the trial judge to exclude the manual whereas the untimely claim challenges trial counsel's decision and performance in not calling a witness to lay a foundation for the excluded evidence.  The different time and focus upon the judge versus counsel as well as the exclusion of evidence versus calling a witness to the stand differentiate the two claims in time and type as not arising from a common core of operative facts.

The same reasoning precludes the timeliness of the ineffective assistance of counsel claim relative to the failure to call an expert witness to testify about the causal link between domestic violence and a child's fabrication of sexual abuse against a third party.  The timely claim involved the trial judge's decision to exclude evidence of the domestic violence

incident and the untimely claim involved counsel's performance of
not calling a witness to establish a causal link.  The first
claim attacks the trial judge and the exclusion of evidence based
on the right to present a defense and the second claim attacks
trial counsel and his failure to call a witness to the stand in
violation of the Sixth Amendment.

The final ineffective assistance of counsel claim is even
more remote.  The untimely claim attacks trial counsel's failure
to investigate a defense that gave a motive for the victim to
fabricate the charges.  An ineffective assistance of counsel
claim based upon an attorney's failure to investigate focuses on
whether the investigation conducted by the attorney, in this
instance questioning and conversing with petitioner and his
longtime friend, was reasonable and supportive of the decision
to abandon this line of investigation in a case involving the
victim's and petitioner's credibility and a lack of physical
evidence.  See Dugas v. Coplan, 428 F.3d 317, 328-329 (1st Cir.
2005);[12] see also Wiggins v. Smith, 539 U.S. 510, 521 (2003)

---

[12]  As articulated by the court in Dugas:

[W]e must decide whether, given the particular facts of this
case, he fell below the constitutional standard of
competence by inadequately investigating the "not arson"
defense that he decided to pursue as part of his overall
defense.  We emphasize that the question is not whether
Raimo should have presented a "not arson" defense.  Instead,
we focus on whether the investigation supporting his pursuit
of the defense was itself reasonable.

("'strategic choices made after less than complete investigation are reasonable' only to the extent that 'reasonable professional judgments support the limitations on investigation'"). Trial counsel's investigation, however, is completely unrelated in time and type from all of the timely claims. The trial judge's refusal to admit the manual at trial and his refusal to admit the testimony concerning the domestic abuse incident do not involve a common core of facts with trial counsel's investigation into the father's purported demand for money from petitioner prior to trial. Untethered in time and type to any claim in the original petition and completely devoid of a common core of operative facts with any timely claim, the final ineffective assistance of counsel claim does not relate back to the filing of the original, timely claims.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[13] that respondent's request to deny the petition in

---

Id. at 328.

[13] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.

the opposition memorandum (Docket Entry # 42) be **ALLOWED** and that

the petition be **DISMISSED.**

                __/s/ Marianne B. Bowler__
                **MARIANNE B. BOWLER**
                United States Magistrate Judge